UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEYET K.,[1] | No. 1:26-cv-05021-TLN-CSK |
| Petitioner, | A# 241-032-257 |
| v. | |
| WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Meyet K.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

**I.    FACTUAL BACKGROUND**[2]

This matter arises out of Petitioner's challenge to his civil immigration detention without a hearing.  Petitioner is a 56-year-old native Kurd who entered the United States on March 25, 2023 to seek asylum.  (ECF No. 1 at 2.)  Immigration authorities briefly detained Petitioner, instituted removal proceedings against him, and then released Petitioner on his own recognizance.  (*Id.*)  Petitioner has now lived in the United States for approximately three years.  (*Id.*)  In that time, he has timely applied for asylum, established substantial community ties, obtained work authorization and gainful employment, and paid his taxes.  (*Id.*)  Petitioner is not subject to an order of removal.[3]

On February 25, 2026, Petitioner states he had a verbal dispute with his roommate and police came to his home.  (*Id.* at 3.)  Thereafter, Petitioner was charged with misdemeanor simple assault/battery and disorderly conduct.  (ECF No. 6-2.)  This incident is Petitioner's only encounter with law enforcement while in the United States; he has no other criminal history.  (*Id.*)

On March 25, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner while on his way to criminal court for a pretrial conference.  (ECF No. 1 at 3; ECF No. 6-1 at 2, 4.)  ICE officers followed Petitioner, driving from his home to the courthouse, and conducted a vehicle stop.  (ECF No. 6-1 at 2, 4.)  Petitioner was arrested with out notice or a pre-deprivation hearing.  (*Id.*)  Since his arrest, while in ICE custody, Petitioner has been transferred to seven different ICE facilities in Massachusetts, Louisiana, Virginia, Pennsylvania, Texas, Arizona, and now California.  (*Id.*)

While in ICE custody in Pennsylvania, Petitioner suffered a heart attack.  (*Id.*)  Petitioner asserts he has not received proper medical care in ICE custody and he has "suffered from inhuman pain."  (*Id.*)  Petitioner has serious medical conditions that require ongoing monitoring, medical care, and medication.  (*Id.*)  Specifically, Petitioner was a kidney donor for his sister and, recently, in January 2026, he underwent heart surgery.  (*Id.*)

---

[2]    The facts are not disputed.

[3]    *See* Automated Case Information, U.S. Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited July 7, 2026).

Petitioner has now been detained for over three months.  (*See id.*)  There is no evidence in the record that Petitioner has ever been provided with any hearing or custody determination as to the justification of his detention.  Petitioner now challenges the lawfulness of his civil detention. (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–13.)  Respondents contend Petitioner is only entitled to the process provided by statute and he is subject to mandatory detention without a bond hearing.  (ECF No. 6.)  The Court first addresses statutory authority before turning to the constitutional claim.

### A.    Statutory Authority

Petitioner alleges his detention is governed by 8 U.S.C. § 1226(a), which provides for a bond hearing.  (ECF No. 1 at 9.)  Respondents argue Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which does not provide for a bond hearing.  (ECF No. 6 at 1–2.)

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who were

3

released into the United States by immigration authorities.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Indeed, Respondents recognize the cases contrary to their position in this district (ECF No. 6 at 2), yet they offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).  Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision, including a bond hearing.  Having settled the proper statutory authority, the Court turns to the constitutional claim.

B.    Fifth Amendment Violation

Petitioner alleges his detention without a hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8–13.)  Respondents argue (1) Petitioner is only entitled to the process conferred by statute under 8 U.S.C. § 1225(b)(2) and (2) Petitioner does not have a liberty interest because his release was terminated after an encounter with law enforcement.  (ECF No. 6 at 3.)  The Court disposed of the first argument above and need not address it again.  The Court now considers whether Petitioner has a liberty interest protected by due process and what procedures are owed.

4

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  Petitioner was released into the United States by immigration authorities in 2023 and, over the last three years, he has established ties with his community, obtained gainful employment, paid his taxes, and pursued lawful immigration relief.  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents contend Petitioner does not have a liberty interest because they terminated Petitioner's release as a result of his encounter with law enforcement. (ECF No. 6 at 3.) Respondents further state that because the "conditional release document did not promise a bond hearing or any other process before release could be revoked" the government did not owe Petitioner such process. (*Id.*) However, Respondents' own documents are not the arbiter of constitutional protections for Petitioner. Moreover, Respondents provide no authority, and this Court is aware of none, establishing that an individual's liberty interest is stripped at the moment he encounters law enforcement. Rather, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Even if such an encounter were a violation of the terms of Petitioner's release, it does not follow that Petitioner's liberty interest is then immediately and automatically lost. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (similarly noting that "even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing."); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum applicant improper even if she violated the conditions of her release because she was not a danger to society or a flight risk).

In the present context, Petitioner's conditional release from immigration custody is analogous to parole, and it has long been recognized that a parolee's liberty interest is lost at the time parole is revoked, not before. *Moody v. Daggett*, 429 U.S. 78, 87 (1976); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."). "The Government's assertion that a parole grantee is entitled to no due process procedural protections prior to recission of his parole grant is untenable." *Drayton v. McCall*, 584 F.2d 1208, 1214 (2d Cir. 1978). The Court thus

rejects Respondent's assertion that Petitioner has no liberty interest by reason of an encounter with law enforcement, particularly where it was not accompanied by procedural safeguards. *See Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (rejecting the Government's proposition that a petitioner's DUI arrest justifies re-detaining him without due process); *Rodriguez Cruz v. Warden of the Golden State Annex*, No. 1:26-CV-00348-DAD-SCR, 2026 WL 453561, at *2 (E.D. Cal. Feb. 18, 2026), report and recommendation adopted, No. 1:26-CV-00348-DAD-SCR, 2026 WL 564588 (E.D. Cal. Feb. 27, 2026) (same). Due process concerns are particularly acute where criminal proceedings are ongoing and there has been no conviction or admission of guilt.

With a clear liberty interest intact, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over three months, separated from his community, unable to work, without any opportunity to be heard as to his detention. While in custody Petitioner suffered a heart attack and he continues to suffer with "inhuman pain." (ECF No. 1 at 3.) Petitioner also asserts is not receiving medically-necessary care. (*See id.*) Accordingly, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received

any opportunity to be heard as to the justification of his detention, either pre- or post-deprivation of liberty. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to an order of removal; his immigration proceedings are still pending. Respondents are not claiming that Petitioner is a danger to the public or a flight risk. (*See* ECF No. 6.) Therefore, the risk that he is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Under these circumstances, the Court finds due process required Respondents to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not identified any reason Petitioner should be a "special case," nor do they supply an individualized justification for

8

Petitioner's detention.  (*See generally* ECF No. 6.)

Petitioner was not provided with any notice or a pre-deprivation hearing prior to his detention.  Neither did Petitioner receive a hearing after he was detained over three months in custody.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Meyet K. (A# 241-032-257) from custody.  At the time of release, Respondents must return all of Petitioner's documents and possessions.  Respondents must file a **notice of compliance** with this provision of the Order no later than **July 10, 2026**.

3. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Clerk of the Court shall serve a copy of this Order on the **Central Valley Annex Detention Facility**.

5. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

//

//

//

9

IT IS SO ORDERED.

Date: July 7, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10